# JOHN HANNEY v. THE COMMONWEALTH.

ERROR TO THE COURT OF QUARTER SESSIONS OF SCHUYLKILL COUNTY.

Argued April 18, 1887—Decided May 9, 1887.

1. In criminal prosecutions, evidence as to the good character of the defendant is to be regarded as evidence of a substantive fact, like any other fact tending to establish the defendant's innocence, and it ought to be so regarded both by court and jury: Heine v. Commonwealth, 91 Penn. St. 145, followed.

2. On the trial of a criminal cause, witnesses testified to the good character of the defendant. The court charged *inter alia :* "If you believe that the testimony in this case clearly points out the guilt of John Hanney, then his previous good character should have no weight in determining the question of his guilt or innocence. If, however, you think that the commonwealth have made out but a weak case, that whilst possibly it might be sufficient for conviction, still the case is a weak one, there the testimony as to his good character ought to weigh with you, with strength sufficient to raise a reasonable doubt in his favor, which reasonable doubt would enure to his acquittal."

*Held,* to be error.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 10 January Term 1886, Sup. Ct.; Court below, No. 289 May Term 1884, Q. S.

In the court below this case was an indictment of John Hanney, charging him with fraudulently conspiring with William Kelly and Thomas Keating to cheat and defraud the township of Norwegian, in the county of Schuylkill. A true bill was found May 19, 1884, and the case came on for trial November 19, 1884.

The defendant in 1883–84 was the treasurer of Norwegian township, Schuylkill county, and during the same period Thomas Keating was a supervisor and William Kelly his clerk. The indictment was under the 128th section of the act of March 31, 1860, P. L. 412, and contained two counts, one gen-

eral, and the other setting out as overt acts the issuance of fraudulent orders upon the township treasurer for labor and services in the repairing and construction of roads, highways and bridges, to and in the names of persons to whom the township was not indebted for such labor or services, and the fraudulent indorsement of the names of the payees in said orders, and the appropriation of the money purporting to be due thereon, by the defendant to his own use. The testimony of defendant included a large number of witnesses as to his good reputation.

The court, D. B. GREEN, J., delivered a charge to the jury, the whole of which was before this court in the paper-book of the defendant in error, and part of which was as follows:

[It is also charged that Mr. Hanney engaged in a conspiracy to defraud the township by the purchase of a horse from Crowe, and that this horse was to be used on the public roads in violation of law. The law upon that subject is embraced in the act of 1859, section 9, P. L. 53, " That from and after the passage of this act, any supervisor of highways within the county of Schuylkill, who shall furnish teams, wagons, carts, materials or labor, except his own superintendence as supervisor, in the township in which he is a supervisor, in the use, sale or profit of which he is directly or indirectly interested, and shall receive money from the said townships therefor, shall be held guilty of a misdemeanor in office, and, upon conviction thereof, shall be punished as provided for in the 8th section of this act."

That makes it a criminal offence for the supervisor to use his horse and cart on the public roads and receive money for their use. It is a criminal offence on the part of the supervisor. Would it be any offence on the part of the treasurer, or on the part of another party, to assist, knowingly, to conspire for the purpose of perpetrating such a fraud as that upon the township? It is undoubtedly true that Hanney's paying for or going security for the payment of the horse, would not justify a conviction. If, however, you find under the evidence in this case that the horse was purchased by Hanney, or between Hanney and Keating; that he was to be used upon the public roads; that he was put in the name of William Kelly

for the purpose of evading the provisions of the law; that these orders were drawn in the name of William Kelly, but the money paid to Thomas Keating, because, as John Hanney says, Thomas Keating was entitled to it, because it was his horse and wagon; if you believe that John Hanney was cognizant of all these things and was assisting in perpetrating this fraud upon the township, you have here testimony which would warrant a conviction for conspiracy to defraud the township, because such orders were illegal and the party was not entitled to receive any money, under the provisions of the law.] [1]

[You have heard a great many witnesses as to the good character of John Hanney. It is not necessary that we should comment upon the character of these witnesses, because they are amongst the first names in the community. They uniformly testify to the fact that John Hanney has borne all along a good character for honesty. It is for you to determine what effect good character shall have in determining the guilt or innocence of this defendant under this indictment. If you believe that the testimony in this case clearly points out the guilt of John Hanney, then his previous good character should have no weight in determining the question of his guilt or innocence. If, however, you think that the commonwealth have made out but a weak case; that whilst, possibly, it might be sufficient for conviction, still the case is a weak one, there the testimony as to his good character should weigh with you, with strength sufficient to raise a reasonable doubt in his favor, which reasonable doubt would inure to his acquittal. Testimony as to good character is always to be taken into consideration where the testimony in the case is seriously conflicting, and where the commonwealth have not made out a clear case. If, however, the commonwealth make out a clear case beyond any question as to guilt, then we say to you that testimony as to good character ought not to avail for the purpose of screening a party from punishment.] [2] It should only be taken into consideration in determining the degree and amount of punishment.

[The jury, of course, always gives the defendant the benefit of a reasonable doubt, even where there is no testimony as to good character. Where you have a reasonable doubt as to a

party's guilt, that doubt growing out of the facts in evidence in the case—that is, where you feel satisfied that the testimony in the case is not of such a convincing character as to satisfy you of the guilt of the party, there would be a reasonable doubt, and such doubt would inure to the benefit of the defendant.] [2]

The jury found a verdict of guilty, and on June 1, 1885,. the court sentenced the defendant to pay a fine of $100 and costs, and to undergo an imprisonment in the county prison for a period of nine months.   Thereupon the defendant took this writ, assigning for error:

1. That part of the charge embraced in [ ][1]
2. The parts of the charge embraced in [ ][2] [2]

*Mr. James Ryon* and *Mr. Daniel Dougherty* (with them *Mr. W. J. Whitehouse, Mr. M. M. L' Velle* and *Mr. John W. Ryon*), for the plaintiff in error:

1. Under this indictment there could not be a conviction for a conspiracy to violate the 9th section of the act of February 15, 1859, P. L. 53.   That act first prohibited a supervisor from using and employing his own team to work upon the public highways.   The offence being a statutory one, an indictment must set out with precision sufficient to show what the conspiracy was, in order that it may appear that the confederates had an unlawful purpose : Hartman v. Com., 5 Penn. St. 66; Hazen v. Com., 23 Idem 364; Hamilton v. Com., 3 P. & W. 142; Respublica v. Tryer, 3 Y. 451; Com. v. Keenan, 10 Phila. 194; Com. v. Ramsey, 1 Brew. 422; Humphrey v. State, 17 Fla. 381; Updegraff v. Com., 6 S. & R., 5; Com. v. Reiter, 78 Penn. St. 161; State v. Hanley, 25 Minn. 429; Seifred v. Com. 101 Penn. St. 200; and a conviction under this indictment would be no bar to a prosecution drawn under the 9th section of the act of 1859.

Again, the punishments provided by this statute and the Crimes Act of 1860 are entirely different.   A conspiracy to commit the offence prohibited by the act of 1859 could not be punished more severely than the offence prohibited by the act: Hartman v. Com., 5 Penn. St. 60; Scott v. Com., 6 S. & R. 226; and it was left to the jury to convict under either act and the court could sentence under either, and the defendant be

sentenced for an offence with which he was never charged nor convicted.

2. The charge gave the overwhelming evidence of good character only as a makeweight in the case; that the jury should use it only in case the evidence was conflicting and where the commonwealth has made out but a weak case, and there evidence of good character could only be used to assist to raise a reasonable doubt, "which reasonable doubt would inure to his acquittal;" and this was error: 2 Russ. Crimes, 785; Rex v. Stannard, 7 C. & P. 673; 3 Greenl. Ev. § 25; Heine v. Com., 91 Penn. St. 145; Kilpatrick v. Com., 31 Idem 216; Com. v. Hart, 2 Brew. 546; Com. v. Carey, 2 Idem 404; Cathcart v. Com., 37 Penn. St. 111.

*Mr. John A. Nash* (with him *Mr. District Attorney J. H. James, Mr. C. W. Wells* and *Mr. William Wilhelm*), for the defendant in error:

1. The indictment is drawn under section 128 of the Crimes Act of March 31, 1860. The plaintiff in error confounds an indictment for the commission of the offence charged in section 9 of the act of 1859 and a conviction thereunder, with an indictment and conviction for a conspiracy to commit that offence.

A contract made about a matter prohibited by statute is void though not expressly declared to be so : Seidenbender v. Charles, 4 S. & R. 157; Columbia Bank Bridge Co. v. Haldeman, 7 W. & S. 233; Morris Run Coal Co. v. Barclay Coal Co., 68 Penn. St. 173. Besides, the fact of confederating is the gist of the offence: Collins v. Com., 3 S. & R. 220; Com. v. McKisson, 8 S. & R. 420; Hazen v. Com. 23 Penn. St. 362; Com. v. Bartilson, 85 Idem 482.

2. As to the charge of the court upon the question of character. The evidence in this case was not made a mere makeweight as in Heine v. Com. There can be no question about the right, nay, the duty of the judge, charging the jury, to discuss the evidence in the case and to show its application when compared with other evidence; and evidence as to character is no exception to the rule : Repsher v. Watson, 17 Penn. St. 368; Leibig v. Steiner, 94 Idem 472; Bitner v. Bitner, 65 Idem 347; Bonner v. Herrick, 99 Idem 225; Mc-

Lain v. Com., 99 Idem 86; McConkey v. Com., 101 Idem 420; Alexander v. Com., 105 Idem 11.

OPINION, MR. JUSTICE GORDON:

We agree with the court below, that if the defendant, John Hanney, who was the treasurer of Norwegian township, paid orders which he knew were issued in violation of the 9th section of the Act of 1859, P. L. 53, or which were otherwise fraudulent, under an arrangement with one or both of the supervisors, or any other person, or persons, so to do, he was guilty of the cheat charged, and liable to conviction under the indictment found against him. We think, however, the court failed to give that weight to the defendant's evidence of good character which should have been given to it. The said court thus, *inter alia*, charged the jury: " You have heard a great many witnesses to the good character of John Hanney. It is not necessary that we should comment upon the character of these witnesses, because they are amongst the first names in the community. They uniformly testify that John Hanney has borne all along a good character for honesty. It is for you to determine what effect good character shall have in the determination of the guilt or innocence of this defendant under this indictment. If you believe that the testimony in the case clearly points out the guilt of John Hanney, then his previous good character should have no weight in determining the question of his guilt or innocence. If, however, you think that the commonwealth has made out but a weak case, that whilst possibly it might be sufficient for conviction, still the case is a weak one, there the testimony as to his good character ought to weigh with you, with strength sufficient to raise a reasonable doubt which would inure to his acquittal."

That this part of the learned judge's charge was a mistake may be discovered by a reference to the case of Heine v. The Commonwealth, 91 Penn. St. 145. In this case we held, that evidence of good character is substantive, and must be treated as such; that it is not a mere makeweight to be thrown in to determine the balance in a doubtful case, but that it may, of itself, by the creation of a reasonable doubt, produce an acquittal. It is only, says the learned judge, where the commonwealth has made out but a weak case, though possibly

sufficient for conviction, that good character becomes an available force, thus repeating the very error made in the case cited; for a weak case on part of the prosecution is a doubtful case, and, without evidence of any kind on part of the defence, the jury ought to acquit. To say, therefore, that proof of character is only available under such circumstances, is to say that it is of no substantial account whatever. It is very true that where the commonwealth has clearly and indubitably established the defendant's guilt, good character is of no avail; but, in such event, the same may be said of any other evidence, however positive, which the defendant may have given; nevertheless, to say to the jury, even in the case supposed, that the evidence of the defence is to be disregarded would clearly be error, for of the evidence and its weight, the jury are the sole judges.

Character is of importance in this; it may, of itself, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of the jury and so produce an acquittal. An honest man may, through malice or otherwise, be charged with crime, and his life or liberty be endangered by fallacious circumstances or perjury, and he may be able to produce no evidence to prove his innocence except his own oath; and if, in such case, a blameless life and unstained character are of no avail, —are a mere makeweight in a doubtful case,—his condition is a sad one. But fortunately for the upright man, so situated, we have got beyond all doubt upon this subject, and have firmly established the doctrine, that evidence of good character is to be regarded as a substantive fact, like any other tending to establish the defendant's innocence, and ought to be so regarded both by court and jury.

> The judgment of the court of Quarter Sessions is now reversed, and it is ordered that the record be remitted for further proceeding.