Opinion by
Henderson, J.,
Without discussing the numerous assignments of error seriatim, we shall consider those deemed material to the determination of the case. The first relates to the refusal of the court to strike out a part of the testimony of George W. Patterson as set forth in the assignment. The question propounded to the witness was perhaps not objectionable, but the answer thereto was not legally responsive and not competent. It not only stated an opinion or conclusion of the witness as to the condition of his daughter’s clothing, but included a statement as to what she had said. If the witness had stated the facts with reference to the clothing, thereby enabling the jury to *562 draw the inferences therefrom, the answer would have been responsive to that extent, but as it was given it presented no basis for a conclusion by the jury on the facts. A description of the condition and not the opinion of the witness was presumably what the commonwealth intended to introduce and the answer resulted, probably, from the. misapprehension by the witness of the legal purport of the question. The record does not present any fact which made competent that part of the answer relating to the admission made by the daughter of the witness. It does not even pretend to be a recital of her language, but whether intended as a repetition of what she said or as the opinion of the witness as to the meaning of her language it was not competent. It related to a transaction not charged in the indictment and was not concomitant with the act to which the declaration referred. How long after the occurrence, shown by the commonwealth to have taken place on May 14, the alleged declaration was made does not appear. It was evidently a considerable time thereafter and the declaration did not spring from the act. It is only when the declarations accompany the transaction so as to be wrought into it and to emanate from it that they can be rightly regarded as excepted from the rule that excludes hearsay: Whar. Crim. Ev. (9th ed.) sec. 262. The motion to strike out this evidence should have been allowed.
The defendant introduced evidence to sustain his general reputation for chastity, to which the commonwealth replied by calling several witnesses, one of whom was R. N. Dersheimer. His testimony was objected to on the ground that he had not knowledge that qualified him to speak on the subject. The defendant lived in the borough of La. Plume. The witness had been a resident for a number of years of the borough of Dalton, near La Plume, but had moved to Dorrancetown. About six months after he moved to Dorrancetown he heard the reputation of the defendant discussed. The witness was then asked: “Q. From that discussion what would you say his reputation for chastity was, good or bad? A. I should say bad.” It was not shown by the witness that the defendant was so generally known in Dalton as to have a *563 reputation there. On the contrary, the witness did not know the defendant in Dalton and never heard his reputation discussed in that borough; nor did it appear from his examination that he was acquainted with the general reputation of the defendant for chastity anywhere. That he heard the subject “discussed”' at Dorrancetown neither created a reputation nor qualified the witness to speak of it in the absence of evidence that the defendant was known in the latter place and had acquired a reputation there. It does not follow that one has a reputation which may be the subject of evidence because a witness has heard it discussed. A discussion may be engaged in by one person, but it will not be pretended that a reputation in a legal sense, good or bad, could thereby be created. The general reputation of the defendant was involved, not what some particular individual may have said of him: Kimmel v. Kimmel, 3 S. & R. 336. There are probably few persons in any community against whom disparaging remarks are not made by someone, but these do not make a general reputation. In Wike v. Lightner, 11 S. & R. 198, it was said “the question is, what is said by people in general? That is the true point of inquiry, and everything which stops short of it, is incorrect.” Before the witness is qualified to speak it must appear that he is acquainted with the general reputation of the person with respect to the particular character involved, in the neighborhood in which he resides. If it appear that he has this knowledge he is competent to testify concerning it; otherwise, not. This course of inquiry was said by Judge Thompson in Bogle’s Executors v. Kreitzer, 46 Pa. 465, to have acquired the binding force of a rule: Whar. Crim. Ev. (9th ed.) sec. 487; United States v. Vansickle, 2 McLean, 219; State v. Randolph, 24 Conn. 363; Bucklin v. State, 20 Ohio, 18; People v. Mather, 4 Wend. 229; Cheritree v. Roggen, 67 Barb. 124; Kelley v. Proctor, 41 N. H. 139. Persons of blameless lives are not ordinarily subject to hostile criticism and a good reputation may be shown by the evidence of witnesses that they have never heard the character of the person spoken against, as well as by affirmative evidence of the favorable speech of the people of the vicinity; but a bad reputation is only shown by evidence of adverse comment on *564 the person’s conduct by the people generally in the neighborhood where he lives. It is necessarily implied that the person inquired about should have been so related to the community in which he lived or acted as to have established a general reputation. The authorities show that the witness was not qualified to testify on the subject of reputation'and the defendant’s objection to his competency should have been sustained, and the evidence having been admitted the motion to strike out should have been granted. The fifth assignment is sustained.
A similar objection was made to the evidence of E. H. Fisk, a witness called for the commonwealth in rebuttal on the subject of reputation. Mr. Fisk lived in the borough of Dalton, about two miles from where the defendant lived in the borough of La Plume. He was not acquainted with the reputation of the defendant in the borough of La Plume. He had heard it discussed at Dalton. Who discussed it and to what extent was not disclosed by his testimony. Whether the defendant was generally known in the borough of Dalton does not appear. The witness was not asked whether he was acquainted with the general reputation for chastity of the defendant in the place where he lived; nor did he state that he knew his general reputation anywhere. The difficulty of getting a character witness to understand the distinction between his own opinion of the person inquired about and the reputation which he sustains among the people of his own neighborhood makes it important that the examination should be so conducted that the opinion, sometimes prejudiced, of the witness should not be made a substitute for the general reputation which alone is competent in such an investigation, and the propriety of the rule is well illustrated by the course of examination adopted when this witness and Mr. Dersheimer testified. The same reasons which prevail against the qualification of the latter exclude the former and sustain the sixth assignment.
The sixteenth anniversary of the birth of Madeline Patterson occurred December 3, 1906. Evidence was offered by the commonwealth showing illicit relations between her and the defendant on the night of December 2, 1906, and the court *565 charged the jury that the defendant might be convicted if he had such relation with the girl between December 3, 1906, and September 9,1905. The defendant contends that Madeline Patterson was sixteen years of age on December 2,1906. The prosecution was brought under the Act of May 19,1887, P. L., 128. The persons protected by that act are women children under the age of sixteen years.” The 15th, 16th and 17th assignments of error present the question, when was Madeline Patterson sixteen years of age? Numerous authorities hold that a minor attains his majority on the day preceding the twenty-first anniversary of his birth, or on the day preceding the anniversary of birth where a maj ority is fixed by statute at another age. On that day he may execute a deed or make a will or vote as an elector. If an apprentice, his term of service expires that day and, generally speaking, he may perform all the acts of which he is capable after he has passed his majority, and, as the law recognizes no fractions of a day, this ability exists during the whole of the day preceding the anniversary of birth. In Bardwell v. Purrington, 107 Mass. 419, it was decided that a person who was born on the eighth day of September, 1852, would become of the full age of twenty-one years if he should live to the seventh day of that month in 1873. To the same effect are Wells v. Wells, 6 Ind. 447; State v. Clarke, 3 Harr. 557; Hamlin v. Stevenson, 4 Dana, 597; Ross v. Morrow, 85 Texas, 172. Where a statute provided that as to defendants between the ages of nine and thirteen years the burden of proof was on the state to show accountability for crime, the defendant was held to have been thirteen years of age the day preceding the anniversary of his birth: Linhart v. State 33 Texas Cr. App. 504. This decision is an exact authority in support of the appellant’s position. In Griffiths’s Case, 1 Kulp, 157, it was held that one who voted on the day preceding the twenty-first anniversary of his birth was a qualified elector. The same rule is stated in FitzHugh v. Dennington, 6 Mod. 259; 1 Blackstone’s Com. 463; 2 Kent’s Com. 233; 1 Jarman on Wills (6th ed.), 35. Our attention has not been called to, nor have we found, any case holding a contrary doctrine. The subject is discussed in 1 Minor’s Inst. 514, and in a comment thereon by Pro *566 féssor Lile in his notes, in both of which the contrary view is taken, but the latter author concedes that the authorities have been against his view for 200 years and that it does not seem possible to shake them. Such being the state of the law it is reasonable to assume that the act of 1887 was passed with reference thereto and that it was the purpose to fix the age of consent with regard to a particular day rather than the hour of the birth of the person concerned. In legal intendment Madeline Patterson was sixteen years of age on December 2, 1906. It follows that (that part of the instruction of the court which permitted the jury to convict the defendant for any act committed on December 2 was erroneous. The 15th, 16th and 17th assignments are sustained.
The 21st assignment relates to the charge of the court on the subject of the defendant’s evidence of good reputation. We think the jury may have been misled by the language of the learned trial judge. It was in effect that if the jury was convinced by the other evidence in the case that the defendant was guilty then evidence of a previous good reputation, no matter how well established, would not overcome the case presented by the commonwealth, but that where a case is conflicting the defendant had the right to have his reputation considered for what it may be worth. It is now a well-established proposition that evidence of good character is substantive evidence and not a mere makeweight introduced into a doubtful case. Such evidence may have the effect to create a reasonable doubt and thereby produce an acquittal, and the weight to be given to it is for tfie jury. It might be that a defendant confronted by very persuasive evidence of a criminating character could present evidence of good reputation of such force that it alone would produce such an impression of improbability as to the crime charged that doubt would arise in the minds of the jurors and an acquittal follow. A good reputation is a substantive fact, like any other, tending to establish the defendant’s innocence: Heine v. Com., 91 Pa. 145; Hanney v. Com., 116 Pa. 322. It is true that where an indubitable case has been made out against the defendant his reputation for good character will not avail, but that may be said of any *567 other evidence introduced in his behalf, however positive and direct it may have been, as was remarked by Judge Gordon in the case last cited. In a doubtful case the defendant is entitled to an acquittal because of the failure of the commonwealth to make out a conclusive case, and he does not need evidence of good character to help him out. If such evidence is only to be taken into consideration when the case is doubtful it is to destroy its value altogether. The accused has a right to appeal to the jury on evidence of his good reputation, even against the most damaging testimony, and of its value the jury are the sole judges. In Hanney v. Com., 116 Pa. 322, the court charged the jury, “ If you believe that the testimony in this case clearly points out the guilt of John Hanney, then his previous good character should have no weight in determining the question of his guilt or innocence.” There was the further instruction that if the jury considered the case of the commonwealth a weak one, though sufficient for conviction, the testimony of good character ought to raise a reasonable doubt which would inure to the acquittal of the defendant. Of this instruction the Supreme Court held that even where the defendant’s guilt was clearly established by other evidence it would be error to instruct the jury to disregard that of good character, for it was for them to determine what effect such evidence would have in connection with what was presented by the commonwealth. Com. v. Eckerd, 174 Pa. 137, and Com. v. Harmon, 199 Pa. 521, do not qualify these adjudications. In each of the cases the jury was instructed that evidence of good character was positive and important testimony and not a mere makeweight and was to be taken into consideration with all the other evidence in determining the defendant’s guilt. A distinct issue is not raised by evidence of good reputation, but is to be taken into consideration with all of the other evidence against and for the accused. When the jury is satisfied beyond a reasonable doubt of the guilt of the defendant it is their duty to convict, but this conclusion is only to be reached after having given due regard to the evidence of good reputation along with the other' testimony in the case. The instruction of the learned trial judge is so similar *568 to that reviewed in Hanney v. Com., 116 Pa. 322 that we feel constrained to sustain this assignment of error.
The 25th assignment criticises the instruction of the court to the jury that there was no evidence that the girl was a person of bad repute. The contention of the appellant’s counsel is that the phrase “ good repute ” in the proviso of the statute is synonymous with “ good character, ” and that the words refer not to what the person is reputed to be, but to what he really is. If the statute named “character” instead of “repute” there would be a basis for the appellant’s argument. The critical distinction between character and reputation is well known; one term representing the combination of qualities or peculiarities which compose one’s mental traits and constitute his ethical individuality, while reputation is reported or attributed character — the estimate attached to a person by the community. This distinction has not been observed generally in the statutes and decisions of the courts, however, and many cases in this state show that “character” and “reputation” are used interchangeably. In Kimmel v. Kimmel, 3 S. & R. 336 it is said that “character” is a term convertible with “ common report, ” and in the same case Judge Duncan said, “Character and reputation are the same. The reputation which a man has in society is his character.” In Wike v. Lightner, 11 S. & R. 198, Chief Justice Tilghman expressed the same thought in these words: “In order to discredit a witness you can examine only to his general character.” Similar expressions in the same opinion show plainly that character was used in the sense of reputation. The same forms of expression appear in Bogle’s Executors v. Kreitzer, 46 Pa. 465; Hanney v. Com., 116 Pa. 322; Heine v. Com., 91 Pa. 145, and other cases. There is much support, therefore, for the position that if the word were “ character ” it should be -understood to mean imputed rather than actual character, but we need not go so far, for the expression is “repute.” This means character attributed; public estimate; established opinion; reputation. Such was the interpretation placed upon the same language in the forty-first section of the act of March 31, 1860. That section made the seduction of a female of good repute under *569 twenty-one years of age, under promise of marriage, a misdemeanor. In Oliver v. Com., 101 Pa. 215, the court held the words “good repute” to be equivalent to good reputation, and that in a trial on an indictment under that act the burden was on the commonwealth to prove that the woman offended against was a person of good reputation for chastity. This interpretation is in harmony with the definitions of the word and we see no reason why it is not strictly applicable here. The “repute” at issue was the general reputation for chastity of Madeline Patterson in the community in which she lived. Her acts of unchastity prior to the time covered by the indictment, disclosed by her own admissions, were not evidence that she was not of good repute for chastity. The law presumes that she was a person of good repute and the commonwealth is not required to prove the fact. If she did not' sustain that reputation the defendant must show it: Com. v. Allen, 135 Pa. 483. The court was not in error, therefore, in charging as set forth in the 25th assignment.
No exceptions were taken to support the 7th, 8th, 9th, 11th and 12th assignments and the questions presented are not properly before us for determination. The other assignments are not sustained.
The judgment is reversed and a new venire awarded.