# Commonwealth *v.* Evans, Appellant.

*Criminal law—Keeping bawdyhouse—Evidence—Hearsay evidence.*

A verdict of guilty of keeping a bawdyhouse cannot be sustained, where the only evidence to support it is that of a policeman who testified that he was told by a detective who raided the defendant's house that fifteen couples were found therein, and that they had declared that they were unmarried and made it a practice to frequent the house, and it appears that such declarations were not made in the presence of

·the defendant or the witness, and a number of apparently reputable witnesses testify that the defendant kept a respectable hotel for colored people.

Argued March 12, 1913. Appeal, No. 285, Oct. T., 1912, by defendant, from judgment of Q. S. Philadelphia Co., on verdict of guilty in case of Commonwealth v. Jesse Evans. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Indictment for keeping a bawdyhouse. Before SULZBERGER, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict of guilty, upon which the defendant was sentenced to imprisonment for six months.

*Errors assigned* among others were the portions of the charge quoted in the opinion of the Supreme Court.

*John R. K. Scott*, with him *Wm. T. Connor*, for appellant.

*John H. Maurer*, assistant district attorney, with him *Samuel P. Rotan*, district attorney, for appellee.

OPINION BY ORLADY, J., April 21, 1913:

This defendant was convicted of keeping a bawdyhouse, and sentenced to pay the costs of prosecution, and undergo an imprisonment of six months in the county prison. We join with the district attorney in regretting that the evidence, and the charge of the court below were not taken down and transcribed by an official stenographer. The transcript of the notes of testimony as certified by the trial judge, and made up by consent of counsel, does not contain all the evidence offered on the trial and leaves the assignments of error in a debatable position.

The record discloses the fact that the defendant was the proprietor of a hotel at 13th and South street, Philadelphia, for the accommodation of colored people. The

principal assignment of error (second) is to the admission of the testimony of a policeman who participated in raiding the hotel, under the direction of the detective Jacobs, who was the active chief of the vice squad. The assignment is as follows: Policeman Shur, on the stand: "We arrested Evans and raided the hotel on Saturday night, August 3. I went to the second floor and third floor, saw several couples. I went to the wagon with them. About fifteen couples were arrested. They were taken to Magistrate McFARLAND (objected to). Each and every couple said to detective Jacobs objected to and by Mr. Scott. Q. Was Evans present or within hearing of these people? A. No. By the Court. Objection overruled, exception granted. A. That they were unmarried and made it a practice to come to Evans's hotel."

In regard to this evidence, in his charge to the jury, the learned trial judge said: "A more serious piece of evidence is fifteen couples all agreeing that they were committing fornication. This may be true or it may not be true, it is all for you" (third assignment). And further, "If you believe that fifteen bawds were at the same time practicing bawdry, then from this fact you may presume that this is a bawdy-house" (fourth assignment).

The importance of this testimony in producing the verdict of guilty, is apparent from the consideration given to it by the learned trial judge, in overruling the motion for a new trial, when in reply to an inquiry by counsel for the defendant he stated, "That is the whole case. The conviction was entirely based on the fifteen couples. You may assume that." The policeman Shur was the only witness who testified to these admissions. Neither Jacobs to whom the several, or wholesale admissions were made, nor any of the persons taken in the raid were called to support this phase of the case, nor was there any explanation given by the counsel for not doing so. There was no suggestion that they were not living or within reach of process. No name of a single one is mentioned. The record does not show affirmatively that Evans was in the

hotel when it was raided, nor does it show when the alleged admissions were made, whether, while the parties were in the hotel, or in the patrol wagon, or at the magistrate's office, or at any specified time or place, down to the time of the trial, November 20, 1912.

It is conceded by the commonwealth, that as stated by the witness Shur, the defendant was not present or within hearing of the people making the admissions, so that it cannot be doubted that the testimony of this single witness determined the verdict of guilty. The important question on review of this record is, Was this testimony properly received in evidence? The defense was that the Evans House was conducted as a respectable hotel for colored persons. The record does show clearly that well-behaved persons of color, married and single, were there as permanent boarders. A physician, a druggist and a police officer, each residing in the immediate vicinity, testified that it was well known as a properly conducted hotel. Two ministers and others who are acquainted with the hotel, and who lived near to it, testified that they had been there frequently and had often sent visitors from out of town to it for accommodations. Many of the objections that are urged by text writers against receiving hearsay evidence are apparent here. These unsworn statements were clearly not sufficiently definite in regard to a name of a single witness, the time or place of utterance to justify its admission as part of the res gestæ. According to the great weight of authority the true test of the competency of such evidence is that, the words uttered shall be treated as circumstances, and are the automatic and undesigned incidents of a particular litigated act, which are illustrative of the act, and must so harmonize with the fact as to form one transaction. They must be voluntary and spontaneous, and made within so short a time of the occurrence as to preclude the idea of design, or motive for misrepresentation or invention. They must not be a narrative of a past occurrence: Am. & Eng. Encl. of L.—Res gestæ, and cases cited.

If it is mere heresay evidence it is not to be received, as the credit to be given to such evidence rests in part on the veracity and competency of some other person: 1 Phill. Ev. 185. It is urged that these statements were made by the declarants themselves, and that such statements about themselves were as to them, part of the res gestæ, that the words were acts, and they were too closely related to the physical acts to be at all severed. We cannot apply this subtle reasoning against this defendant on account of the absence of proof as to when or where the statements were made, or by whom they were uttered. The most that can be said as far as the record shows is, that certain unnamed parties, at some undesignated time and place, stated when they were not under oath, to a policeman, in the absence of the defendant that they had been committing an unlawful act, and this, without any knowledge of the defendant, other than such knowledge might be inferred from the fact that he was the proprietor of the hotel.

It is elementary law that hearsay evidence is held to be incompetent to establish any specific fact, which in its nature is susceptible of being proved by witnesses who can speak of their own knowledge. Its intrinsic weakness, its incompetency to satisfy the mind as to the existence of the fact, and the frauds which may be practiced under its cover, combine to support the rule that such hearsay evidence as is shown in this case is inadmissible: 1 Greenleaf on Ev., sec. 99; 3 Wigmore on Ev., sec. 1747; Com. v. Howe, 35 Pa. Superior Ct. 554, 562; Com. v. Duffy, 49 Pa. Superior Ct. 344.

The evidence admitted under objection was too vague and unsubstantial to support a verdict which is followed by six months of deprivation of liberty in jail. Such testimony offered too great an incentive for deception, mistake, misapprehension, uncertainty of person and withal without being under the solemnity of an oath.

The assignments of error are sustained and a new trial is awarded.