**Ex parte ROCHA.**

District Court, S. D. Texas, at Corpus Christi.
February 25, 1929.

No. 149.

M. J. Raymond, of Laredo, Tex., for applicant.

D. Heywood Hardy, Asst. U. S. Atty., of Houston, Tex., opposed.

HUTCHESON, District Judge. This case, in its general outlines, is like Ex parte Rodriguez (D. C.) 15 F.(2d) 878. The warrant of deportation in this case is based upon the following findings:

(1) That he has been convicted of, or admits the commission of, a felony, or other crime or misdemeanor, involving moral turpitude, to wit, adultery, prior to his entry into the United States.

(2) And that he entered the United States for an immoral purpose.

The first ground is identical with that discussed in the Rodriguez Case, and, for the same reasons there presented, is wholly ineffective to support the deportation, it being in the alternative and therefore meaningless, since it does not find either that he has been convicted of, or that he admits, but finds that he did one or the other, which is, of course, no finding.

The second ground of the warrant, while definite and clear in its statement, finds no support in the evidence.

Findings for the purpose of deportation, while made by the executive, must partake of judicial character, must be reasonable, and must sustain some apparent relation at least to the facts from which they are derived. A finding, under facts of this kind, that the applicant entered the United States for an immoral purpose, is not only not supported by the evidence, but is on its face absurd.

The evidence establishes that the applicant is 27 years of age; that he was born in Mexico and with his parents entered the United States in 1915, where he has contin-

ued to reside; that he is and has been for some years a barber in the city of Laredo, owning and maintaining a business there; that on the night of October 23, 1928, having a local card which entitled the possessor to travel backward and forward, he went across the footbridge from Laredo to Nuova Laredo, Mexico, returning within an hour, accompanied over and back by a woman, Natividad Santos de Saldana. This card was offered in evidence, and had on it, "Issued to Benigno Rocha; occupation, barber, residence 419 Grant Street, Laredo, Texas."

■ While, as was adverted to in Ex parte Rodriguez, it smacks of the utmost technicality to call a passage across a bridge a new entry, the letter of the law and a practically universal line of authorities do so declare. Therefore, though the applicant has lived in the United States for 13 years, and would not, but for this passage over and back, be subject to deportation no matter what his offense, it is the law that, having crossed over, he stands in the same position as to the power of the government to ·deport him, as though it were his first entry. It does not follow, however, that because of that fact that the executive may, or the court will, close 'its eyes to the dominant and real facts in the case, which are not that he came into the United States for an immoral purpose, but that having gone across the river for an hour's visit, he returned to his home and his business for the purpose of pursuing the ordinary tenor of his life, and whether he did or did not have improper relations with the woman on his return is wholly immaterial, and cannot be found to be the cause of purpose of his return.

■■ The warrant which is the source of the authority of the officer who holds plaintiff being insufficient to support the action, it would follow that plaintiff should be discharged unless the evidence is sufficient to support an affirmative finding under the first ground, in which event, counsel for the government having requested it, a stay should be granted in order to permit a new affirmative finding to be based upon the facts. Mahler v. Eby, 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549.

There has been no conviction of any kind, nor is there any suggestion that there has been. It remains only to inquire whether a finding that the defendant admits the commission of adultery would be supported by the record.

At the outset of the matter, it is perfectly plain that at no place has the defendant admitted in terms the commission of the offense of adultery. No inquiry was ever made of him as to whether he had committed such an offense, and no admission of that kind was volunteered by him. The most that he did admit is that on several occasions during the past eighteen months he has had carnal intercourse with the woman in the case, Natividad Santos de Saldana.

The testimony was affirmative that he did not live with her, and while there was testimony from both the man and the woman of carnal intercourse with each other during that time, the defendant stated positively that he had not been habitually doing so, and neither he nor the woman testified to any such relations as a matter of habit, the woman fixing the occurrence at a certain number of times during the period as two or three times a month, the man either eight or ten times during the whole period.

He further testified that they had not seen each other for three or four months prior to the date in question, and to the question, "Are you now engaged to be married to a lady here in Laredo?" the man testified, "Yes sir, I have my sweetheart and intend to marry her."

It is evident that the Department and the United States attorney are proceeding upon the theory that illicit intercourse is a crime involving moral turpitude, whereas the laws of Texas do not denounce such an act as a crime, but denounce adultery, which is defined as "the living together and carnal intercourse with each other, or habitual intercourse with each other without living together, of a man and a woman when either is lawfully married to some other person."

■ It is hornbook law that not only was occasional sexual commerce not a crime at common law, but adultery itself was not a crime. It was only in ecclesiatical courts that such offense was cognizable. 1 R. C. L. 633. "Adultery was not, however, regarded as an indictable offense, but as a private wrong, and for the injury sustained the husband had his right of action for damages."

■ It is equally hornbook law that we have no common-law crimes, and that nothing is an offense except as denounced by statute, and that under the statutes of Texas mere sexual commerce does not constitute adultery. The act of intimacy must be either "while living together" or habitual.

While, in view of the fact that the defendant has not been convicted, and has not admitted the commission of the offense, it is not necessary to determine whether he could as a matter of law be convicted, since his deportation in this case must rest, not upon

whether he has committed, but whether he has *admitted the commission*, it is not amiss to say that it is quite doubtful whether the defendant could, as a matter of law, be convicted of adultery upon the testimony in the case.

In Hilton v. State, 41 Tex. Cr. R. 190, 53 S. W. 113, the court reversed a conviction for adultery on the ground that the evidence was insufficient as a matter of law, saying: "The statute requires, where the parties do not live together, that the proof must show habitual intercourse, and not merely occasional acts. While the conduct of appellant, as shown by this record, was exceedingly reprehensible, still, the acts being occasional and not habitual, we do not believe the proof is sufficient to sustain the conviction."

In Hafley v. State, 88 Tex. Cr. R. 51, 224 S. W. 1099, the court again reversed for insufficient evidence, saying: "It seems to be the well-settled rule that proofs of occasional acts of carnal intercourse is not sufficient to show habitual intercourse."

That case cites many cases, Collins v. State, 46 Tex. Cr. R. 550, 80 S. W. 372; Wallace v. State, 63 Tex. Cr. R. 612, 141 S. W. 95, and others, all reviewing the evidence of numbers of acts, and all reversing conviction upon the insufficiency of the evidence as a matter of law, with the declaration that it is not the number of acts which is the criterion, but the habitual character of those acts. That it is not the occurrence, but the habit of the occurrence, which constitutes the offense.

In the light of these principles, it is evident not only that the warrant as it now stands is defective, but that the record would not support an amendment.

The writ will therefore be granted, and the applicant will be discharged.