Commonwealth *v.* San Juan et al., Appellants.

Argued October 13, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*W. H. Martin,* for appellants.

*Lee C. McCandless,* District Attorney, for appellee.

OPINION BY JAMES, J., December 17, 1937:

Sam San Juan, Thomas Raimondi, Sam Fratto and Steve Pawk were separately indicted for statutory rape, in violation of the Act of May 19, 1887, P. L. 128, 18 PS §2261; and Peter Hamder and Steve Pawk were jointly indicted for the taking and enticing of a minor child, under the age of sixteen years, for the purpose of sexual intercourse, and as accessories before and after the fact to the offense of statutory rape, in violation of the Act of May 28, 1885, P. L. 27, 18 PS §1151. The defendants were tried jointly and convicted as indicted. Motions for new trials were refused, and from the sentences imposed, appeals were taken by all of the defendants, except Steve Pawk. All of the appeals were argued together and will be disposed of in this opinion.

It is not necessary to give the sordid details of the relations of the defendants with June Creel, the woman child under the age of sixteen years. It is sufficient to state that the testimony fully warranted the convictions. Sam San Juan, Sam Fratto and Steve Pawk admitted they had sexual intercourse with June Creel in the County of Butler, and Steve Pawk and Peter Hamder admitted they had intercourse with her in the City of Pittsburgh. She testified that Thomas Raimondi, who did not take the stand, had intercourse with her, which was corroborated by Fratto, in that after he had intercourse, while at the Villa Marie Inn, he turned the girl over to Raimondi. She further testified that each of the defendants was over the age of sixteen years, whereupon the Commonwealth made the following offer: "In connection with this testimony we offer ......Exhibit No. 4 of the Commonwealth, being the person of Sam Fratto and request that he rise." Defendant arose, and on objection being made, it was overruled. The district attorney then proceeded to offer as exhibits the persons of the other defendants and to

designate each as an exhibit by number, to which no objection was made. The testimony of the defendants who took the stand showed their ages to be as follows: Steve Pawk 22 years, Peter Hamder 27 years, Sam Fratto, a married man, 28 years, and Sam San Juan 31 years.

The first question raised by appellants is, Were the defendants denied their constitutional rights, as guaranteed by Article I, section 9 of the Constitution of Pennsylvania, when their persons were offered as Commonwealth exhibits? As an essential ingredient of the Commonwealth's case, it was necessary to prove, by evidence, that each of the defendants was, at the time of the sexual intercourse, sixteen years of age or upwards. In establishing this, the Commonwealth is not confined to proof of actual age, which in most cases would be impracticable, but is permitted, as was done in the present case, to ask the prosecuting witness the age of each defendant, to which she replied that she knew each of them to be over the age of sixteen years; also by direct testimony as to the defendant's age, merely from his personal appearance; and by calling to the attention of the court and the jury the personal appearance of the defendant. Although the decisions in the various states are in conflict, the rule as laid down by our courts is that the defendant may be identified and his appearance called to the attention of the court and jury as a part of the Commonwealth's case. In *Com. v. Walker*, 33 Pa. Superior Ct. 167, 171, in discussing this very question, the late Judge MORRISON said: "The rule as to exhibiting the defendant to the jury and allowing them to draw inferences of fact from his appearance, has been much discussed in the courts of our sister states, and their decisions upon the subject are by no means uniform; some courts holding it proper to let the jury find facts from the appearance of the de-

fendant, while courts of equal standing, in other states, hold just the contrary.

"An examination of many authorities and several text-writers, among the latter, Professor Wigmore on Evidence, leads to the conclusion that the better rule is, the defendant may be identified and his appearance called to the attention of the court and jury as a part of the commonwealth's case and the jury may take into consideration such appearance in determining whether the defendant is of sufficient age to be guilty under the statute. And the same rule obtains in regard to whether the female is under or over the age prescribed by the statute. 2 Wigmore on Evidence, sec. 1168, is strongly against the doctrine that it is error to make autoptic proference of the thing itself or the person before the tribunal, trying the case, because the losing party cannot obtain a proper revision of the proceedings by the higher court. This author says: 'The general result is, then, that it is no objection to the process of autoptic proference, at a view, or in court, that the bill of exceptions cannot be made to transcribe faithfully the sources of belief thus laid before the jury.' " He further said: "The above considerations lead us to the conclusion that where the commonwealth relies on the appearance of the defendant to sustain a material ingredient of the offense charged, the defendant should be identified and his appearance, relied on, put in evidence in the regular manner of offering other evidence. Indeed, we do not see that autoptic proference can be made properly of a person except by identifying and calling the attention of the court and jury to the appearance of the person relied on as evidence in the issue being tried."

In the recent case of *Com. v. Safis,* 122 Pa. Superior Ct. 333, 338, 186 A. 177, this court said: "The court is criticized, too, for requiring some of the defendants (other than the appellants) to stand when they were

identified by a witness. Such action was found necessary as the defendants' counsel refused to state the name of any particular defendant. This did not violate the constitutional right of any defendant by compelling him to give evidence against himself." A further discussion of this question may be found in Wharton's Criminal Evidence, 11th Ed. Vol. 1, §382, p. 606; Wigmore on Evidence Vol. 4, §2265; 8 R. C. L. p. 79; and 16 C. J. p. 568, §1100. In submitting the personal appearance of the defendants to the jury, the Commonwealth was fully within its rights, yet we see no necessity for designating each defendant as a numbered exhibit. In this respect the prosecuting attorney followed too literally the method suggested by the opinion writer in *Com. v. Walker,* supra, to wit, that the defendant's appearance should be put in evidence in the regular manner of offering other evidence. However, we cannot see how defendants were in any manner prejudiced by the designation as numbered exhibits. Nor do we find any merit in appellants' complaint that the offer made was of the *person* of the defendants rather than of their *appearance.* This seems to be a distinction without a difference. Regardless of the verbiage embraced in the offer, the result in either case is merely that the defendant stands up before the court and jury.

The second alleged error is that the term "good repute" of the woman child was erroneously construed in the charge of the court. It is argued that the term refers to the girl's *character* as distinguished from her *reputation,* whereas, in the charge, the term was made to refer exclusively to the reputation of the girl. In so doing, no error was committed. The term "good repute" means the reputation of the girl for chastity in the community in which she lives; that is, what she is reputed to be, not what she actually is, and the burden is on the defendant to show that the prosecuting wit-

ness bore a bad reputation: *Com. v. Howe,* 35 Pa. Superior Ct. 554; *Com. v. Kester,* 58 Pa. Superior Ct. 509.

Counsel has also argued, in regard to the prosecuting witness's repute, that the presumption of her good repute was overcome by her own testimony of numerous acts of intercourse, with these defendants, during the comparatively short period of her association with them. Such testimony indicates bad character, but it is not evidence of bad "repute." We have held that proof of specific acts tending to show bad character is inadmissible: *Com. v. Stewart,* 110 Pa. Superior Ct. 279, 168 A. 528. In *Com. v. Howe,* supra, it was said: "Her acts of unchastity prior to the time covered by the indictment disclosed by her own admissions, were not evidence that she was not of good repute for chastity." It follows that her admissions of acts of unchastity covered by the indictment are not evidence that she was not of good repute. As the court below well said: "They can not come in this court now and say that they debauched her and that by reason of their acts she became of ill repute." The burden was on the defendants to prove here bad repute, but no evidence on this point was adduced by them.

Further criticism is made of the following excerpts from the court's charge: "But the burden rests upon the defendant of convincing the jury by the weight of the evidence that this girl was at and before she had intercourse with any of these defendants of bad repute...... If you are convinced of that fact, that she was of bad repute in the neighborhood of Unionville for chastity before she became acquainted with and had sexual intercourse with any of these defendants, then that would reduce the offense from statutory rape to fornication as to the unmarried defendants, and to adultery as to the married defendant. ......The defendants say they went to a good deal of trouble to get liquor and they don't deny that she was given liquor to drink; take

that into consideration in determining her conduct, whether that would show she was a bad girl or of bad reputation before she got to know any of these defendants, who apparently traveled in a pack; what one found out about the girl, he told to the other ones." Special attention is drawn to the following language of the above quoted portions of the charge: "this girl was at and before she had intercourse ...... of bad repute"; "she was of bad repute ...... before she became acquainted with and had sexual intercourse with any of these defendants"; and "she was a bad girl or of bad reputation before she got to know any of these defendants." The burden of establishing the bad repute of the woman child rests on the defendant: *Com. v. Allen,* 135 Pa. 483, 19 A. 957; *Com. v. Howe,* supra. It may be conceded that had the defendants submitted proof as to the bad repute of June Creel, then the court should have confined the question of her bad repute to the time of the actual commission of the offenses: *Com. v. Howe,* supra. But as no proof was submitted by the defendants on this question, they were not entitled to have the court submit to the jury the question of the girl's bad repute. The inferences which the jury could draw from the conduct of the woman child in permitting these several defendants to have promiscuous intercourse with her might be sufficient to establish her bad character, but this is not proof of bad repute. Under the section of the statute, which provides that if the jury shall find that such woman child was not of good repute and that the carnal knowledge was with her consent the defendant shall be acquitted of the felonious rape and convicted of fornication only, proof of specific acts are not admissible to show the bad repute of the woman child; the evidence must be confined to the general reputation: *Com. v. Kester,* supra; *Com. v. Stewart,* supra. In submitting the question of bad repute to the jury, the charge of the court was far more

favorable to the defendants than they were entitled to receive.

Appellants' counsel further argues that the evidence was not sufficient to sustain the conviction of Peter Hamder, jointly indicted with Steve Pawk, on the charge of taking and enticing, etc. The testimony shows that on Sunday evening, March 14, 1937, both defendants, accompanied by June Creel, drove from the City of Butler to the City of Pittsburgh, ostensibly to see a movie, arriving about 10:30 o'clock. They went to a store or restaurant, where they learned that the program at the theater was nearly over. Shortly afterwards they drove to the Kilkeary Hotel, where Steve Pawk, accompanied by June Creel, signed the register as man and wife. Both went upstairs to a bedroom where Pawk gave her a tablet, or vaginal cone, to prevent conception. They then had intercourse and shortly afterwards, Hamder called on the telephone and was invited to the bedroom where he had intercourse with her, while Pawk went into the bathroom. Hamder testified that he had purchased the vaginal cones from the manager of the restaurant where they had stopped; but, on cross-examination, he admitted he had made a statement to a county detective—which was later offered in evidence—that shortly prior to leaving Butler, he had been sent by Steve Pawk to a drug store for a box of noriforms, vaginal cones, and that before he had intercourse in the hotel, he had given the girl one of them. His explanation was that he had told this story simply to get out of jail. A druggist testified that Hamder had purchased noriforms from him, but he was unable to fix the date when the purchase was made. As we view this testimony, it is difficult for us to understand how the jury could have reached any other conclusion than that the defendants took June Creel to the City of Pittsburgh for the purpose of sexual intercourse. If the jury believed the statement made by Hamder, that

the contraceptives were obtained at the time the ride was taken, it showed preparation for their nefarious acts. The sufficiency of the testimony deserves no further discussion. Other questions raised by appellants have been carefully examined and we find no merit in them.

The assignments of error are overruled and the judgments are affirmed and the record is remitted to the court below and it is ordered that the defendants appear in the court below at such time as they may be there called, and they be by that court committed until they have complied with the sentences, or any part of them, which had not been performed at the time the appeals in this case were made a supersedeas.