**Nathaniel Flores PAZCOGUIN,
Petitioner,**

v.

**Donald A. RADCLIFFE, District Director; Immigration and Naturalization Service, Respondents.**

No. 00–70595.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Filed June 25, 2002.

---

James A. Stanton, Honolulu, HI, for the petitioner.

Jeffrey J. Bernstein, United States Department of Justice, Washington, DC, for the respondents.

Before: THOMPSON, O'SCANNLAIN, and BERZON, Circuit Judges.

Opinion by Judge DAVID R. THOMPSON; Dissent by Judge BERZON.

DAVID R. THOMPSON, Circuit Judge.

Petitioner Nathaniel Flores Pazcoguin petitions for review of the Board of Immigration Appeals' ("BIA") final order of deportation, finding him excludable from the United States because he: (1) admitted acts that constitute the essential elements of a controlled substance violation, Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II); and (2) was an alien without a valid immigrant visa, INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).

We have jurisdiction under 8 U.S.C. § 1105a(a), as amended by section 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *See Avetova–Elisseva v. INS*, 213 F.3d 1192, 1195 n..4 (9th Cir. 2000).[1] Our jurisdiction is not foreclosed

---

1. This case is governed by the transitional rules of IIRIRA. *See Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997).

by IIRIRA § 309(c)(4)(G) which precludes judicial review in cases where an alien is inadmissible or deportable by reason of having committed a controlled substance offense. *See Alfaro–Reyes v. INS*, 224 F.3d 916, 921–22 (9th Cir.2000); *Magana–Pizano v. INS*, 200 F.3d 603, 607 (9th Cir.1999). We have repeatedly held that we retain jurisdiction to determine whether an alien in fact committed acts that would trigger IIRIRA § 309(c)(4)(G). *See, e.g., Dillingham v. INS*, 267 F.3d 996, 1003–05 (9th Cir.2001); *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir.2000); *Lujan–Armendariz v. INS*, 222 F.3d 728, 734 (9th Cir.2000); *Albillo–Figueroa v. INS*, 221 F.3d 1070, 1073 (9th Cir.2000). Because the central issue here is whether Pazcoguin in fact admitted to committing the essential elements of a controlled substance violation, we have jurisdiction. We deny the petition for review.

### Background

Pazcoguin, a native and citizen of the Philippines, was issued a United States immigrant visa by the American Embassy in Manilla, as the unmarried son of a lawful permanent resident. As part of that visa issuance process, Pazcoguin underwent a psychiatric examination by Dr. Leilani L. Demeterio to determine whether he had a personality disorder. During the examination, Pazcoguin told Dr. Demeterio that he had used marijuana from 1984 to 1987, until he was approximately 21 years old. Dr. Demeterio issued a psychiatric report which noted Pazcoguin's marijuana use. The consular officer in the American Embassy in Manilla reviewed the medical report containing Pazcoguin's admission of using marijuana, but nonetheless issued him an immigrant visa.

Pazcoguin subsequently arrived at the Honolulu International Airport and applied for admission into the United States.

When asked by Inspector James Myers about his statements to Dr. Demeterio relating to his marijuana use, Pazcoguin provided a sworn statement in which he repeated the admissions he had made. Pazcoguin was paroled into the United States for deferred inspection.

On a later date, Pazcoguin appeared with counsel for deferred inspection before Inspector Judith Kalin. During this inspection proceeding, he asserted the right against self-incrimination under the Fifth Amendment and refused to answer any questions about his use of marijuana. Inspector Kalin terminated the proceeding and determined that Pazcoguin was excludable from the United States because of his prior use of marijuana in the Philippines.

An Immigration Judge heard the case and found Pazcoguin excludable. The BIA dismissed his appeal. The BIA held that Pazcoguin was excludable because he admitted using marijuana while living in the Philippines, and that constituted a controlled substance offense under Philippine law. The BIA also held that, because this rendered him inadmissible at the time his visa was issued, he was excludable on the additional ground that he did not have a valid immigrant visa. Pazcoguin timely petitioned this court for review.

### Discussion

**A. Burden of Proof To Establish Admissibility into the United States**

Pazcoguin's possession of the immigrant visa issued by the consular officer in the Philippines constituted a *prima facie* case of his admissibility into the United States. *See Matter of Walsh and Pollard*, 20 I & N Dec. 60, 63, 1988 WL 312511 (BIA 1988); INA § 221(h), 8 U.S.C. § 1201(h); 4 CHARLES GORDON, ET

AL., IMMIGRATION LAW AND PRO-CEDURE § 55.09[3][c] (rev. ed.2001). Pazcoguin argues, however, that the visa did more than this. He contends the visa established his admissibility and foreclosed any "second look" by an immigration officer at the port of entry. He points out that the consular officer in the Philippines who issued the visa did so after considering all of the facts pertaining to his use of marijuana. He argues the decision to issue the visa was a decision by "the U.S. Government's own agent" and the government "should not be permitted to later change its mind at the gates" by an immigration officer rejecting the visa and denying Pazcoguin's entry into the United States. We are unpersuaded by Pazcoguin's argument. The INA *requires* a "double check" of the alien's qualifications by immigration officers at the port of entry. *See* INA § 235(a), 8 U.S.C. § 1225(a).

■ Because Pazcoguin established a *prima facie* case of admissibility, the burden of production shifted to the INS to produce "some evidence" to show that he was not admissible. *See Matter of Walsh and Pollard,* 20 I & N Dec. at 63. If the INS satisfied this burden, Pazcoguin then had to rebut the INS's evidence to satisfy his ultimate burden that he was "not inadmissible under any provision of" the INA. INA § 291, 8 U.S.C. § 1361.

The BIA determined that the INS satisfied its burden of production by presenting three pieces of evidence: (1) Dr. Demeterio's medical report stating that Pazcoguin admitted 9052 having used marijuana, (2) Inspector Myers' statement that Pazcoguin confirmed this admission, and (3) Inspector Kalin's statement that she had attempted to question Pazcoguin about his drug use, but he refused to answer her questions. Pazcoguin did not rebut this showing. Instead, he invoked the Fifth Amendment and refused to answer any of Inspector Kalin's questions about his use of marijuana. According to the BIA, this resulted in Pazcoguin's failure to carry his ultimate burden of establishing his admissibility.

Pazcoguin challenges the showing made by the INS in response to his *prima facie* case. He contends his admissions were not sufficient to warrant his exclusion, and in any event, they should not have been considered because they were invalidly obtained. Therefore, he argues, the INS failed to refute his *prima facie* case and he is entitled to be admitted into the United States. Pazcoguin also raises two constitutional challenges. We consider each of his contentions in turn.

## B. Do Pazcoguin's Admissions Warrant Exclusion?

■ INA § 212(a)(2)(A)(i)(II) provides that an alien is "inadmissable" (with certain exceptions not relevant here) if the alien (1) was "convicted of," or (2) "admits having committed," or (3) "admits committing acts which constitute the essential elements of ... a violation of ... any law or regulation of ... a foreign country relating to a controlled substance ...." In this case, we deal only with the third prong of this statute and ask whether Pazcoguin's admission of marijuana use is an admission of conduct which constitutes the essential elements of a violation of Philippine law.[2]

2. With regard to the INS's second ground for Pazcoguin's exclusion, that he was an alien without a valid immigrant visa, INA § 212(a)(7)(A)(i)(I), the BIA held that the visa issued to him was invalid because his marijuana admission rendered him inadmissable at the time the visa was issued. Our analysis of both grounds for exclusion is the same. In both, we must determine whether Pazcoguin was excludable for having admitted conduct which constituted the essential elements of a controlled substance violation under Philippine law.

The relevant Philippine law is Republic Act No. 6245, known as the Dangerous Drug Act of 1972. Section 8 of this act provides:

> Possession or use of Prohibited Drugs.... The penalty of imprisonment ranging from six years and one day to twelve years and fine ranging from six thousand to twelve thousand pesos shall be imposed upon any person who, unless authorized by law, shall possess or use Indian hemp.

Indian hemp is defined in Section 2(i) of the Act as marijuana.

The first element of the subject offense is possession or use of marijuana. It is undisputed that Pazcoguin admitted using marijuana. So long as that admission may be considered, an issue we analyze hereafter, the possession/use element of the statute is satisfied. Pazcoguin's admitted use of marijuana over several years also satisfies the *mens rea* requirement of intended possession. *See United States v. Chua Lui*, 26 Phil. 94, 1913 Phil. S.Ct. LEXIS 1085 (1913) (intention to possess is *mens rea* requirement of drug possession statute); *United States v. Gan Lian Po*, 34 Phil. 880, 1917 Phil. S.Ct. LEXIS 1498 (1916) (*mens rea* requirement not satisfied where defendant had no knowledge that he had a prohibited drug in his possession).

The remaining question is whether the "unless authorized by law" clause in the statute is an essential element of the offense. If it is, Pazcoguin's admissions are not sufficient to establish that he admitted committing the essential elements of the applicable Philippine controlled substance offense because he did not say his marijuana use was "[un]authorized by law."

Having reviewed Philippine law, we conclude that the "unless authorized by law" clause is not an element of the offense, but rather a defense. In *Philippines v. Renato de los Reyes y Solteo*, 1994 Phil. S.Ct. LEXIS 4884 (1994), the defendant was convicted of selling drugs in violation of the Philippine Dangerous Drug Act. The provision there contained an exception similar to the one in the present case: "without any authority of law." The Philippine Supreme Court held that the clause was a defense and not an element of the offense, and the burden was on the defendant, not the prosecutor to "prove that he falls under the protective mantle of the exemption." *Id.* at *23.

The rule that such an exception in a criminal statute is a defense and not an element of the offense is a long-standing one under Philippine law. *See, e.g., Philippines v. Cadabis*, 97 Phil. 829, 1955 Phil. S.Ct. LEXIS 1264 (1955) ("In a prosecution for violation of a statute which contains an excepting clause," the "exception is for the defendant to prove—not for the prosecution to disprove"); *United States v. Yao Sim*, 31 Phil. 301, 1915 Phil. S.Ct. LEXIS 1282 (1915); *United States v. Chan Toco*, 12 Phil. 262, 1908 Phil. S.Ct. LEXIS 1902 (1908).[3]

Because under Philippine law the "unless· authorized by law" clause is a defense, Pazcoguin need not have stated that his marijuana use was unauthorized in order to admit the essential elements of the offense. We therefore hold that his ad-

---

**3.** In her dissent, Judge Berzon asserts that the INS conceded in its brief to this court that the "unless authorized by law" clause is an element of the crime. For this assertion, the dissent relies on part of a passage from a Philippine treatise that was quoted by the INS. In the very next paragraph of the material the INS quoted, however, the treatise states unequivocally that "[t]he phrase 'unless lawfully authorized' ... states an element of defense and, therefore, it is not necessary to allege in the information that the accused is not authorized to possess" the controlled substance.

missions are sufficient under the INA to establish that he committed acts which constitute the essential elements of the violation of the applicable Philippine controlled substance law and, thus, to warrant his exclusion.

■ This holding is consistent with how our court, in other contexts, has defined "elements of a crime." In *United States v. Innie,* 7 F.3d 840 (9th Cir.1993) we defined "elements of a crime" as the " 'constituent part[s] of the offense *which must be proved by the prosecution* in every case to sustain a conviction under a given statute.' " *Id.* at 850 (quoting *United States v. Sherbondy,* 865 F.2d 996, 1010 (9th Cir. 1988)) (emphasis added); *see also United States v. Fulford,* 267 F.3d 1241, 1250 (11th Cir.2001) ("When Congress uses a word like 'element' in a federal criminal statute without otherwise defining it, we assume that the word carries its accepted meaning in the criminal law. At common law the word 'element' refers to a constituent part of a crime which must be proved by the prosecution to sustain a conviction.") (quotation omitted). The phrase *"essential* element of a crime" also appears in our cases in a variety of contexts. We have never used the phrase to encompass an affirmative defense. *See, e.g., United States v. Carranza,* 289 F.3d 634, 641–42 (9th Cir.2002); *United States v. Du Bo,* 186 F.3d 1177, 1180 (9th Cir.1999); *United States v. King,* 122 F.3d 808, 810 (9th Cir.1997); *Goldeshtein v. INS,* 8 F.3d 645, 647 (9th Cir.1993).

The dissent also argues that because Pazcoguin did not state that his marijuana use was unauthorized by law, he "may not have committed a crime;" thus, he should not be found inadmissible. This argument overlooks the fact that the applicable statute contains three independent grounds for exclusion. The dissent's view might be plausible if the INS had sought to exclude Pazcoguin based on the second ground of exclusion—i.e., that he "admit[ted] having committed a controlled substance violation." *See* INA § 212(a)(2)(A)(i)(II). But that is not this case. The INS relies on the statute's third ground of exclusion— i.e., that Pazcoguin "admit[ted] committing acts which constitute the essential elements of" a controlled substance violation. *See id.* Pazcoguin did in fact make those admissions. Thus, he falls within the statute's third ground for exclusion, and we will not render that ground superfluous by reading it out of the statute. *See United States v. Smith,* 155 F.3d 1051, 1058 (9th Cir.1998) (statute should be construed to give effect to "every clause and word"). We next consider whether Pazcoguin's admissions were validly obtained.

## C. Were Pazcoguin's Admissions Validly Obtained?

Pazcoguin contends that his admissions were not validly obtained because they were not obtained in conformity with the procedural safeguards established by BIA case law. The BIA, he argues, abused its discretion by failing to apply its own precedents when it relied on his admissions and affirmed the exclusion order.

■ We review the BIA's interpretation of its case law under the abuse of discretion standard, and will not disturb its interpretation unless the BIA "acted arbitrarily, irrationally or contrary to law. The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so." *Braun v. INS,* 992 F.2d 1016, 1019 (9th Cir.1993) (internal citation omitted) (citing *Israel v. INS,* 785 F.2d 738, 740 (9th Cir.1986)).

BIA case law has established three requirements which must be met for an admission to qualify as having been validly obtained. First, the admitted conduct must constitute the essential elements of a

crime in the jurisdiction where it occurred. Second, the applicant for admission must have been provided with the definition and essential elements of the crime prior to his admission. Third, his admission must have been voluntary. *See Matter of K,* 7 I & N Dec. 594, 598, 1957 WL 10581 (BIA 1957); *Matter of J,* 2 I & N Dec. 285, 1945 WL 5557 (BIA 1945).

### 1. The admitted conduct must constitute the essential elements of a crime in the Philippines.

■ Pazcoguin contends the INS failed to establish that his admitted conduct constituted the essential elements of a crime under Philippine law, because the INS failed to produce an expert witness on that subject. We disagree. The determination of foreign law is a question of law. *See* Fed.R.Civ.P. 44.1; *DP Aviation v. Smiths Indus. Aerospace & Def. Sys.,* 268 F.3d 829, 846 & n. 16 (9th Cir.2001). In interpreting Philippine law, we "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed R. Civ. P. 44.1. While expert testimony may be useful, it is not "an invariable necessity in establishing foreign law, and indeed, federal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities." *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694, 713 (5th Cir.), *cert. denied,* 531 U.S. 917, 121 S.Ct. 275, 148 L.Ed.2d 200 (2000). "In some cases foreign law may be proved by reference to authorities; in others foreign law experts may testify." *DP Aviation,* 268 F.3d at 848. Here, we have reviewed the Philippine statute at issue and have conducted our own research into Philippine law. Having considered these sources, we are satisfied that Pazcoguin's admitted use of marijuana constituted the essential ele-

ments of a crime prohibited by Philippine Republic Act No. 6425.

Pazcoguin next argues that his conduct was not punishable as a crime at the time he sought admission into the United States because the statute of limitations for his prosecution had expired. This argument misses the mark. The applicable INA statute, § 212(a)(2)(A)(i)(II), does not require the conduct to be punishable as a crime at the time an applicant seeks admission. In fact, the statute "preclude[s] immigration officials from determining guilt or innocence." *Braun,* 992 F.2d at 1019.

### 2. The applicant must have been provided with a definition and the essential elements of the offense prior to his admission.

Pazcoguin next argues that his admissions were not validly obtained because he was not provided with a definition and the essential elements of the Philippine crime of possession or use of marijuana prior to making his admissions. *See Matter of K,* 7 I & N Dec. at 596–98.

The BIA decision in this case fails to address whether the INS complied with this BIA requirement. The BIA decision simply explains that:

> The record reveals that the Service attempted to comply with requirements set forth in *Matter of K, supra,* during the inspection process and at the exclusion hearing. However, it was the applicant who was unwilling to proceed.

While it is true that Pazcoguin refused to answer Inspector Kalin's questions during the inspection process, the issue is whether the INS carried its burden of production after Pazcoguin established his *prima facie* case, and that depends on whether Pazcoguin's admission to Dr. Demeterio during his medical examination in the Philippines or his admission to Inspector

Myers during his interview in Honolulu may be considered. As explained below, we conclude that the admission to Dr. Demeterio may be considered but the admission to Inspector Myers may not.

 With regard to Pazcoguin's admission to Dr. Demeterio, that admission was made during a routine medical examination to determine whether he had a personality disorder. A copy of Dr. Demeterio's "psychiatric report" dated March 5, 1993 was attached to a Medical Examination Optional Form # 157 dated March 8, 1993. In Dr. Demeterio's report, under the category of "HISTORY," she related the history Pazcoguin had given her. There she reported:

> Presently, the subject smokes around ten sticks of cigarettes per day. He admits to having tried marijuana while he was in second year college at age 17, using it twice every two weeks until 1987. He has not tried it since then as it made him feel dizzy and nauseated anyway. He now drinks about five bottles of beer twice a month.

Unlike his subsequent admission to Inspector Myers, which we discuss next, Pazcoguin's admission of marijuana use made to Dr. Demeterio occurred during a routine medical examination. Dr. Demeterio had no reason to suspect that Pazcoguin would admit to having used marijuana, and her examination was not conducted for the purpose of obtaining any such admission. This is far different from the circumstances in *Matter of K*, in which the alien confessed his criminal conduct during an interrogation by a police officer. *Matter of K*, 7 I & N Dec. at 595. We conclude that Pazcoguin's admission to Dr. Demeterio is not rendered invalid due to Dr. Demeterio's failure to provide him with a definition and the essential elements of the subject offense.

 BIA precedent, however, precludes consideration of Pazcoguin's admis-

sion to Inspector Myers. That admission occurred during questioning by an INS inspector to determine, among other things, whether Pazcoguin was excludable as a result of his prior use of marijuana. Inspector Myers confronted Pazcoguin with his earlier admission to Dr. Demeterio and asked him about it:

Q: When the immigration officer at Honolulu International Airport began to examine your immigration packet she discovered a Psychiatric Report dated March 05, 1993 made out by a Dr. Leilani L. Demeterio, M.D. (attached to the Optional Form 157, Medical Exam Report). In the report you admit having tried marijuana while you were in the second year of college at age 17, and using it twice every two weeks until 1987. What did you tell the Immigration Inspector when she asked you about it?

A: I told her that I did use it since I was 17 and then until 1987.

Q: After being referred back to secondary, you told me that you were misquoted by the doctor and that you only used it twice at the age of seventeen. But after I warned you of the consequences of lying to me you told me that you were going to tell the truth, that you began using marijuana at age 17 until age 21 in 1987 and then after that I did not use it any more until this present time. Is that correct?

A: Yes.

Q: Do you have anything to add to this statement?

A: No.

It is clear from the foregoing questioning that Inspector Myers was seeking answers from Pazcoguin which would implicate him in having committed the crime of possession or use of marijuana in the Phil-

ippines, and this information was being sought to determine his excludability from the United States. Inspector Myers was duty-bound to know and apply BIA rules in obtaining Pazcoguin's admission, a duty which was not excused by Pazcoguin's previous admission to Dr. Demeterio. *See id.* at 596–97 (holding that the immigration officer should have complied with the BIA's procedural rules and provided the alien with the elements of the offense, even if the alien had made an earlier admission to a police officer). Because Inspector Myers failed to provide Pazcoguin with a definition and the essential elements of the crime of possession or use of marijuana under Philippine law, the BIA should not have considered Pazcoguin's admission to Inspector Myers.

### 3. The admission must be voluntary.

Pazcoguin has made no showing that his admission to Dr. Demeterio was not voluntary, unequivocal, or unqualified, as required by *Matter of L,* 2 I & N Dec. 486, 488, 1946 WL 6044 (BIA 1946).

We conclude that the INS satisfied its burden of production by presenting Pazcoguin's admission to Dr. Demeterio. This was sufficient for the INS to carry its burden of producing "some evidence" that Pazcoguin was excludable. *Matter of Walsh and Pollard,* 20 I & N Dec. at 63. Because Pazcoguin failed to rebut that showing, he failed to carry his ultimate burden of establishing that he was not inadmissible under any provision of the INA.

### D. Pazcoguin's Constitutional Challenges

Before we address Pazcoguin's constitutional challenges, "it is important to underscore the limited scope of judicial inquiry into immigration legislation." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). " '[T]he power over aliens is of a political character and therefore subject to only narrow judicial review.' " *Id.* (quoting *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976)). Because of its broad power over immigration matters, " 'Congress regularly makes rules that would be unacceptable if applied to citizens.' " *Id.* (quoting *Mathews v. Diaz,* 426 U.S. 67, 80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)).

Pazcoguin contends that INA § 212(a)(2)(A)(i)(II) violates his right to procedural due process because it allows him to be excluded "based solely on his own statement" without any determination that he actually committed an offense. We are unpersuaded by this argument. As an alien in exclusion proceedings, Pazcoguin "has no procedural due process rights regarding his admission or exclusion. . . . 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.' " *Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1449 (9th Cir.1995) (quoting *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953)) (quoting *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950)). The statute provides the only process Pazcoguin is due, and he received that process.

Pazcoguin also argues that INA § 212(a)(2)(A)(i)(II) is unconstitutional because it deprives his mother, a United States citizen, of a "substantial right . . . to be re-united with her son." This argument fails. "[D]espite the impact of . . . [immigration] classifications on the interests of those already within our borders, congressional determinations such as this one are subject only to limited judicial review." *Fiallo,* 430 U.S. at 795 n. 6, 97 S.Ct. 1473. Pazcoguin falls within a classification of aliens whom Congress has seen

fit to exclude. Despite the pain this may cause his mother, we will not disturb that classification.

REVIEW DENIED.

BERZON, Circuit Judge, dissenting.

By applying burden of proof concepts applicable at trial, the majority interprets INA § 212(a)(2)(A)(i), 8 U.S.C. § 1182(a)(2)(A)(i), to exclude from this country individuals who have not actually admitted committing any crime. Under the majority's approach, for example, someone who assaulted another in self-defense could be excluded, as long as the law of the country where the assault occurred made self-defense an affirmative defense at trial. Because Pazcoguin did not admit to using marijuana without authorization of law, and therefore may not have committed any crime, I respectfully dissent from the majority's conclusion that he is excludable.

Additionally, the BIA's decisions permit the use of only those admissions made after an alien has been fully informed about the legal requirements governing conviction of the crime to which he then admits. I would hold that the BIA abused its discretion by relying on an uninformed admission in violation of its own precedent.

1. *"Essential Elements"*

Section 212(a)(2)(A)(i) classifies as "inadmissible" (with certain exceptions and discretionary waivers not relevant here):

[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—

(I) a crime involving moral turpitude ..., or

(II) a violation of ... any law or regulation of ... a foreign country relating to

a controlled substance (as defined in section 802 of Title 21).

*Id.* The majority bases its holding that Pazcoguin is excludable pursuant to § 212(a)(2)(A)(i) on its determination that the Philippine statutory prohibition of *unauthorized* marijuana use refers to a defense rather than to an element of the crime.

It is noteworthy, to begin, that the INS itself views the requirement that marijuana use be unauthorized as an "element" of the crime in the sense that term is used in the pertinent statute. In its brief to this court, the INS asserted:

The Act provides the required elements for possession of marijuana: "It must be (1) unauthorized, (2) either actual or constructive, (3) irrespective of its quantity, (4) with intent to possess, i.e., with full knowledge that what was possessed was any of the prohibited drugs or regulated drugs."

INS Brief at 16.[1] Even without this concession by the INS, however, I could not agree with the majority's narrow interpretation of the "essential elements" language contained in INA § 212(a)(2)(A)(i), for the reasons that follow.

The purpose of this statutory provision, as this court has made quite clear, is to exclude persons who are guilty, that is, who have actually committed a crime. *See Braun v. INS*, 992 F.2d 1016, 1019 (9th Cir.1993) (Section 212(a)(2) "only contemplates exclusion of aliens who have been convicted or who freely and voluntarily admit their *guilt.*") (emphasis added).

The legislative history confirms that the purpose behind the provision is to exclude *criminals.* The statute excluded originally only those persons "who have been con-

---

1. The INS Brief's citation for the quotation it uses is a document in the Administrative Record. The document is mainly illegible. It appears to be an excerpt from a treatise on Philippine law, but that is not clear.

victed of, or admit, having committed a ... crime ... involving moral turpitude." 8 U.S.C. § 136(e) (1946). Applying this language courts "held that the admission of the crime must be definite, not merely admission of acts from which the crime might be detected." S.Rep. No. 81–1515, at 352 (1950) (*citing Ex parte Rocha*, 30 F.2d 823, 825 (S.D.Tex.1929)). Concerned that this case law was unduly limiting the intended exclusion of criminal aliens, the Committee on the Judiciary recommended adopting language excluding "aliens who admit committing acts which constitute the essential elements of such a crime,"

> to overcome the situation which exists under the present law where an alien admits facts in an examination which *clearly indicate commission of such a crime,* but does not actually "admit having committed" such a crime as required by the law.

*Id.* at 353–54 (emphasis added). The next year, Congress added the recommended language in order that

> immigration officers charged with administering the law will be able to determine from the information supplied by the alien whether *he falls within the "criminal" category of excludables,* notwithstanding the fact that there may be no record of conviction or admission of the commission of a specific offense.

S.Rep. No. 82–1137, at 9 (1952), *reprinted in* Oscar M. Trelles, II & James F. Bailey, III, 3 *Immigration and Nationality Acts Legislative Histories and Related Documents* doc. 3 (1979) (*"Legislative Histories"*) (emphasis added); H.R.Rep. No. 82–1365, at 48 (1952), *reprinted in Legislative Histories* doc. 4, *also reprinted in* 1952 U.S.C.C.A.N. 1653, 1702 (emphasis added); *see also Matter of K—,* 7 I. & N. Dec. 594, 597, 1957 WL 10581 (BIA 1957) ("It is the necessity for the admission of the legal conclusion [that the alien committed a particular crime] which has been

dispensed with by" the inclusion of the "essential elements" language).

So the language at issue today was meant to identify, and then to exclude, "criminal" aliens, *id.,* whose admissions "clearly indicate commission of ... a crime." S.Rep. No. 81–1515, at 353–54. Under the majority's novel interpretation of the § 212(a)(2) "essential elements" language, however, an alien faces exclusion if he or she admitted committing all of the elements for which the prosecution *would bear the burden of proof at trial*—although no trial may ever take place. This is so, apparently, even if it is clear from the alien's admission that, taking into account available defenses, he or she did *not* commit a crime.

This perverse interpretation cannot be squared with the BIA's contemporaneous understanding of the statute. *See Bankamerica Corp. v. United States,* 462 U.S. 122, 130, 103 S.Ct. 2266, 76 L.Ed.2d 456 (1983) (adhering to the "long-held policy of giving great weight to the contemporaneous interpretation of a challenged statute by an agency charged with its enforcement.") (citing *Edwards' Lessee v. Darby,* 25 U.S. (12 Wheat) 206, 210, 6 L.Ed. 603 (1827)). In 1957, shortly after the adoption of the "essential elements" language, the BIA interpreted the statute to permit entry of an alien who had admitted committing all of the essential elements of a crime of moral turpitude for which the prosecution would carry the burden of proof at trial. *See Matter of K—,* 7 I. & N. Dec. at 596. The alien in *Matter of K—* had not admitted an element that, although included in the statute, the alien would have had to disprove at trial as a defense. *See id.* at 596 ("Since the respondent indicates that the carnal knowledge was with the consent of the respondent's stepdaughter, the latter portion of the statute indicates that, if she was not in good repute, he was required to be acquitted of rape and be convicted merely of

fornication. We find no admission by the respondent that his stepdaughter was 'of good repute.'"); *Pennsylvania v. San Juan*, 129 Pa.Super. 179, 195 A. 433, 436 (1937) ("The burden was on the defendants to prove her bad repute."). I have not found, and the majority has not identified, any other case interpreting the "essential elements" language as used in § 212(a)(2) in the way that the majority does today.

It is precisely because an admission, rather than a conviction, provides the basis for exclusion that the technical rules of proof applicable at trial have no place here. At trial, a defendant has the opportunity to prove certain "defenses"—in this case, the absence of certain statutorily—required elements—and must do so to avoid conviction only if the prosecution has carried its burden of proof as to the other elements necessary to permit a finding of guilty. An alien excluded from the United States for admitting only the "essential elements" that the prosecution would need to prove in trial has not stood, and will not stand, trial and so will not have the opportunity to prove any "defenses." *See Braun*, 992 F.2d at 1019 ("Congress has precluded immigration officials from determining guilt or innocence.... [Section 212(a)(2)] does not contemplate exclusion of an alien by transforming a deportation hearing into a criminal trial.").[2]

This case is illustrative: In holding that the defendant has the burden of proving that his use of marijuana was authorized by law, the Philippine Supreme Court explained that it is "more practical and convenient" to have the defendant "set up this fact by way of defense." *Philippines v. Renato de los Reyes y Solteo*, 1994 Phil. S.Ct. LEXIS 4884, * 24 (1994). The prac-

ticality and convenience of this distribution of the burden of proof at trial has no pertinence to the ultimate question under § 212(a)(2)—whether we know for certain from what the alien said that he was *guilty* of the requisite type of crime.

The most troubling aspect of the majority's decision is that if Pazcoguin had admitted that he used marijuana but also asserted that he did so with authorization, he would still have admitted committing all of the "essential elements" of the crime as the majority defines them. And this would be the case even if Pazcoguin presented proof that he did have legal authorization for his marijuana use. *Cf. Renato de los Reyes y Solteo*, 1994 Phil. S.Ct. LEXIS 4884 at *24 ("[T]he legislator desired to withdraw from the operation of the statute a limited class of smokers, to wit, those who smoked under the advice and by prescription of a licensed and practicing physician."); Philippine Dangerous Drug Act of 1972, Republic Act No. 6245, § 12 (setting forth the penalty to "be imposed upon any physician or dentist who shall prescribe any prohibited drug for any person whose physical or physiological conditions does not require the use thereof."). So under the majority's interpretation of the term "essential elements," § 212(a)(2) will operate not only to exclude "criminals" whose admissions "clearly indicate commission of ... a crime," but also to exclude aliens who clearly have *not* admitted the commission of any crime and are in fact innocent.

I would hold instead that the term "essential elements" must include, at a minimum, each and every element explicitly included by the legislature in the statute upon which exclusion would be based.

2. Each case cited by the majority for the proposition that the terms "elements" and "essential elements" refer only to those "elements" for which the prosecution must bear the burden of proof at trial used those terms in the trial context when such burdens of proof apply. It is, again, precisely because § 212(a)(2) operates outside the trial realm that those cases have little relevance here.

### 2. *Uninformed Admission*

There is an independent reason why I would grant Pazcoguin's petition for review: The BIA violated its own rules concerning the need to inform an alien of the elements of a crime before an admission may have the effect of precluding entry.

In *Matter of K*—, 7 I. & N. Dec. at 596, 598, the BIA held that an alien could not be excluded for having admitted committing all of the essential elements of a crime of moral turpitude because the admission was made to a police officer who had not previously informed the alien of the elements of the crime. The BIA rejected the argument that the admission could be used to exclude the alien because it was "made to a police officer and [the officer] had no reason to give the [alien] a definition of the offense and was not aware that this Board had held that a definition was a requirement for a valid admission." *Id.* at 596.

The BIA should have applied the same rule here. *See Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir.1993) (The "BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so[ ]. While agencies must have significant flexibility to adapt their practices to meet changed circumstances or the facts of a particular case, they cannot reach their decisions capriciously."). The majority attempts to avoid this conclusion by noting that Pazcoguin admitted his marijuana use to a doctor rather than a police officer. Why this difference should matter we are not told. The police officer in *Matter of K*— was no more involved than was the doctor here in the actual exclusion decision, and had no more reason to give the alien a definition of the crime.[3]

More importantly, perhaps, there is no reason why it should matter *to whom* the alien admitted the facts of the crime. The BIA adopted the "informed admissions" rule in order to insure that aliens "receive fair play." *Matter of K*—, 7 I. & N. Dec. at 597. The rule reflects an understanding that exclusions based on admissions alone—without the procedural protections and burdens of proof required in trial— create a heightened risk that an alien will be unfairly and erroneously excluded from entering this country. That risk is not alleviated in any way because the person to whom the alien admits engaging in criminal behavior is not an INS employee.

For both of the above reasons, I respectfully dissent.

---

**3.** I note that Dr. Demeterio may well have had more reason to provide Pazcoguin with the requisite definition than the police officer in *Matter of K*—. Contrary to the majority's suggestion, Pazcoguin saw Dr. Demeterio not for a routine medical examination but as part of his visa entry process.