**Nathaniel Flores PAZCOGUIN, Petitioner,**

v.

**Donald A. RADCLIFFE, District Director; Immigration and Naturalization Service, Respondents.**

No. 00–70595.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Filed June 25, 2002.

Amended Oct. 25, 2002.

James A. Stanton, Honolulu, HI, for the petitioner.

Jeffrey J. Bernstein, United States Department of Justice, Washington, D.C., for the respondents.

Before: THOMPSON, O'SCANNLAIN, BERZON, Circuit Judges.

Dissent by Judge BERZON.

### ORDER

The opinion in this case, filed June 25, 2002 and published at 292 F.3d 1209 (9th Cir.2002), is amended by striking therefrom the dissent of Judge Berzon, and substituting in its place Judge Berzon's dissent filed contemporaneously with this order. No change is made in the majority opinion.

Judges Thompson and O'Scannlain have voted to deny the Petition for Rehearing. Judge O'Scannlain has voted to deny the Petition for Rehearing En Banc, and Judge Thompson has recommended denial of that petition. Judge Berzon has voted to grant the Petition for Rehearing and the Petition for Rehearing En Banc.

The full court has been advised of the Petition for Rehearing En Banc, and no judge of the court has requested a vote on that petition. *See* Fed. R.App. P. 35(b).

The Petition for Rehearing and the Petition for Rehearing En Banc are DENIED.

### DISSENTING OPINION

BERZON, Circuit Judge, dissenting.

By applying burden of proof concepts applicable at trial, the majority interprets INA § 212(a)(2)(A)(i), 8 U.S.C. § 1182(a)(2)(A)(i), to exclude from this country individuals who have not actually admitted committing any crime. Under the majority's approach, for example, someone who assaulted another in self-defense could be excluded, as long as the law of the country where the assault occurred made self-defense an affirmative defense at trial. Because Pazcoguin did not admit to using marijuana without authorization of law, and therefore may not

have committed any crime, I respectfully dissent from the majority's conclusion that he is excludable.

Additionally, the BIA's decisions permit the use of only those admissions made after an alien has been fully informed about the legal requirements governing conviction of the crime to which he then admits. I would hold that the BIA abused its discretion by relying on an uninformed admission in violation of its own precedent.

1. *"Essential Elements"*

Section 212(a)(2)(A)(i) classifies as "inadmissible" (with certain exceptions and discretionary waivers not relevant here):

[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—

(I) a crime involving moral turpitude ..., or

(II) a violation of ... any law or regulation of ... a foreign country relating to a controlled substance (as defined in section 802 of Title 21).

*Id.* The majority bases its holding that Pazcoguin is excludable pursuant to § 212(a)(2)(A)(i) on its determination that the Philippine statutory prohibition of *unauthorized* marijuana use refers to a defense rather than to an element of the crime.

It is noteworthy, to begin, that the INS itself views the requirement that marijuana use be unauthorized as an "element" of the crime in the sense that term is used in the pertinent statute. In its brief to this court, the INS asserted:

The Act provides the required elements for possession of marijuana: "It must be (1) unauthorized, (2) either actual or constructive, (3) irrespective of its quantity, (4) with intent to possess, i.e., with full knowledge that what was possessed

was any of the prohibited drugs or regulated drugs."

INS Brief at 16.[1] Even without this concession by the INS, however, I could not agree with the majority's narrow interpretation of the "essential elements" language contained in INA § 212(a)(2)(A)(i), for the reasons that follow.

The purpose of this statutory provision, as this court has made quite clear, is to exclude persons who are guilty, that is, who have actually committed a crime. *See Braun v. INS*, 992 F.2d 1016, 1019 (9th Cir.1993) (Section 212(a)(2) "only contemplates exclusion of aliens who have been convicted or who freely and voluntarily admit their *guilt.*") (emphasis added).

The legislative history confirms that the purpose behind the provision is to exclude *criminals.* The statute excluded originally only those persons "who have been convicted of, or admit, having committed a ... crime ... involving moral turpitude." 8 U.S.C. § 136(e) (1946). Applying this language courts "held that the admission of the crime must be definite, not merely admission of acts from which the crime might be detected." S.Rep. No. 81–1515, at 352 (1950) (*citing Ex parte Rocha*, 30 F.2d 823, 825 (S.D.Tex.1929)). Concerned that this case law was unduly limiting the intended exclusion of criminal aliens, the Committee on the Judiciary recommended adopting language excluding "aliens who admit committing acts which constitute the essential elements of such a crime,"

> to overcome the situation which exists under the present law where an alien admits facts in an examination which *clearly indicate commission of such a crime*, but does not actually "admit having committed" such a crime as required by the law.

*Id.* at 353–54 (emphasis added). The next year, Congress added the recommended language in order that

> immigration officers charged with administering the law will be able to determine from the information supplied by the alien whether *he falls within the "criminal" category of excludables*, notwithstanding the fact that there may be no record of conviction or admission of the commission of a specific offense.

S.Rep. No. 82–1137, at 9 (1952), *reprinted in* Oscar M. Trelles, II & James F. Bailey, III, 3 *Immigration and Nationality Acts Legislative Histories and Related Documents* doc. 3 (1979) (*"Legislative Histories"*) (emphasis added); H.R.Rep. No. 82–1365, at 48 (1952), *reprinted in Legislative Histories* doc. 4, *also reprinted in* 1952 U.S.C.C.A.N. 1653, 1702 (emphasis added); *see also Matter of K—*, 7 I. & N. Dec. 594, 597, 1957 WL 10581 (BIA 1957) ("It is the necessity for the admission of the legal conclusion [that the alien committed a particular crime] which has been dispensed with by" the inclusion of the "essential elements" language).

So the language at issue today was meant to identify, and then to exclude, "criminal" aliens, *id.*, whose admissions "clearly indicate commission of ... a crime." S.Rep. No. 81–1515, at 353–54. Under the majority's novel interpretation of the § 212(a)(2) "essential elements" language, however, an alien faces exclusion if he or she admitted committing all of the elements for which the prosecution *would bear the burden of proof at trial*—although no trial may ever take place. This is so, apparently, even if it is clear from the alien's admission that, taking into account

---

1. The INS Brief's citation for the quotation it uses is a document in the Administrative Record. The document is mainly illegible. It appears to be an excerpt from a treatise on Philippine law, but that is not clear.

available defenses, he or she did *not* commit a crime.

This perverse interpretation cannot be squared with the BIA's contemporaneous understanding of the statute. *See Bankamerica Corp. v. United States,* 462 U.S. 122, 130, 103 S.Ct. 2266, 76 L.Ed.2d 456 (1983) (adhering to the "long-held policy of giving great weight to the contemporaneous interpretation of a challenged statute by an agency charged with its enforcement.") (citing *Edwards' Lessee v. Darby,* 25 U.S. (12 Wheat) 206, 210, 6 L.Ed. 603 (1827)). In 1957, shortly after the adoption of the "essential elements" language, the BIA interpreted the statute to permit entry of an alien who had admitted committing all of the essential elements of a crime of moral turpitude for which the prosecution would carry the burden of proof at trial. *See Matter of K—,* 7 I. & N. Dec. at 596. The alien in *Matter of K—* had not admitted an element that, although included in the statute, the alien would have had to disprove at trial as a defense. *See id.* at 596 ("Since the respondent indicates that the carnal knowledge was with the consent of the respondent's stepdaughter, the latter portion of the statute indicates that, if she was not in good repute, he was required to be acquitted of rape and be convicted merely of fornication. We find no admission by the respondent that his stepdaughter was 'of good repute.'"); *Pennsylvania v. San Juan,* 129 Pa.Super. 179, 195 A. 433, 436 (1937) ("The burden was on the defendants to prove her bad repute."). I have not found, and the majority has not identified, any other case interpreting the "essential elements" language as used in § 212(a)(2) in the way that the majority does today.

It is precisely because an admission, rather than a conviction, provides the basis for exclusion that the technical rules of proof applicable at trial have no place here. At trial, a defendant has the opportunity to prove certain "defenses"—in this case, the absence of certain statutorily-required elements—and must do so to avoid conviction only if the prosecution has carried its burden of proof as to the other elements necessary to permit a finding of guilty. An alien excluded from the United States for admitting only the "essential elements" that the prosecution would need to prove in trial has not stood, and will not stand, trial and so will not have the opportunity to prove any "defenses." *See Braun,* 992 F.2d at 1019 ("Congress has precluded immigration officials from determining guilt or innocence.... [Section 212(a)(2) ] does not contemplate exclusion of an alien by transforming a deportation hearing into a criminal trial.").[2]

This case is illustrative: In holding that the defendant has the burden of proving that his use of marijuana was authorized by law, the Philippine Supreme Court explained that it is "more practical and convenient" to have the defendant "set up this fact by way of defense." *Philippines v. Renato de los Reyes y Solteo,* 1994 Phil. S.Ct. LEXIS 4884, *24 (1994). The practicality and convenience of this distribution of the burden of proof at trial has no pertinence to the ultimate question under § 212(a)(2)—whether we know for certain from what the alien said that he was *guilty* of the requisite type of crime.

The most troubling aspect of the majority's decision is that if Pazcoguin had ad-

---

**2.** Each case cited by the majority for the proposition that the terms "elements" and "essential elements" refer only to those "elements" for which the prosecution must bear the burden of proof at trial used those terms in the trial context when such burdens of proof apply. It is, again, precisely because § 212(a)(2) operates outside the trial realm that those cases have little relevance here.

mitted that he used marijuana but also asserted that he did so with authorization, he would still have admitted committing all of the "essential elements" of the crime as the majority defines them. And this would be the case even if Pazcoguin presented proof that he did have legal authorization for his marijuana use. *Cf. Renato de los Reyes y Solteo,* 1994 Phil. S.Ct. LEXIS 4884 at *24 ("[T]he legislator desired to withdraw from the operation of the statute a limited class of smokers, to wit, those who smoked under the advice and by prescription of a licensed and practicing physician."); Philippine Dangerous Drug Act of 1972, Republic Act No. 6245, § 12 (setting forth the penalty to "be imposed upon any physician or dentist who shall prescribe any prohibited drug for any person whose physical or physiological conditions does not require the use thereof."). So under the majority's interpretation of the term "essential elements," § 212(a)(2) will operate not only to exclude "criminals" whose admissions "clearly indicate commission of ... a crime," but also to exclude aliens who clearly have *not* admitted the commission of any crime and are in fact innocent.

I would hold instead that the term "essential elements" must include, at a minimum, each and every element explicitly included by the legislature in the statute upon which exclusion would be based.

### 2. *Uninformed Admission*

There is an independent reason why I would grant Pazcoguin's petition for review: The BIA violated its own rules concerning the need to inform an alien of the elements of a crime before an admission may have the effect of precluding entry.

In *Matter of K—,* 7 I. & N. Dec. at 596, 598, the BIA held that an alien could not be excluded for having admitted committing all of the essential elements of a crime of moral turpitude because the admission was made to a police officer who had not previously informed the alien of the elements of the crime. The BIA rejected the argument that the admission could be used to exclude the alien because it was "made to a police officer and [the officer] had no reason to give the [alien] a definition of the offense and was not aware that this Board had held that a definition was a requirement for a valid admission." *Id.* at 596.

The BIA should have applied the same rule here. *See Yepes–Prado v. INS,* 10 F.3d 1363, 1370 (9th Cir.1993) (The "BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so[ ]. While agencies must have significant flexibility to adapt their practices to meet changed circumstances or the facts of a particular case, they cannot reach their decisions capriciously."). The majority attempts to avoid this conclusion by noting that Pazcoguin admitted his marijuana use to a doctor rather than a police officer. Why this difference should matter we are not told. The police officer in *Matter of K*—was no more involved than was the doctor here in the actual exclusion decision and had no more reason to give the alien a definition of the crime.[3]

More importantly, perhaps, there is no reason why it should matter *to whom* the alien admitted the facts of the crime. The

---

**3.** I note that Dr. Demeterio may well have had more reason to provide Pazcoguin with the requisite definition than the police officer in *Matter of K—.* Contrary to the majority's suggestion, Pazcoguin saw Dr. Demeterio not for a routine medical examination but as part of his visa entry process, *see* 8 U.S.C. § 1201(d); 22 C.F.R. § 42.66, and Dr. Demeterio was, it appears, a "panel physician" designated by the United States Embassy, *see* 22 C.F.R. § 42.66(b); 42 C.F.R. § 34.2(*o*).

BIA adopted the "informed admissions" rule in order to insure that aliens "receive fair play." *Matter of K—*, 7 I. & N. Dec. at 597. The rule reflects an understanding that exclusions based on admissions alone—without the procedural protections and burdens of proof required in trial-create a heightened risk that an alien will be unfairly and erroneously excluded from entering this country. That risk is not alleviated in any way because the person to whom the alien admits engaging in criminal behavior is not an INS employee.

For both of the above reasons, I respectfully dissent.